**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ANDREW JENSEN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DISMISSING MOTION UNDER 28 U.S.C. § 2255**<br><br>Case No. 2:26-cv-76-CW<br><br>Hon. Clark Waddoups |

This matter is before the court on Andrew Jensen's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed January 30, 2026.[1] [*See* ECF No. 1.] After having carefully reviewed Mr. Jensen's § 2255 Motion, the United States' response [*see* ECF No. 7], and the applicable record, and for the reasons discussed in more detail below, the court has determined that his § 2255 Motion should be dismissed as untimely.[2]

---

[1] Because Mr. Jensen is proceeding *pro se* the court has liberally construed his § 2255 Motion, but it has not assumed the role of his advocate. *See United States v. Viera*, 674 F.3d 1214, 1216 n.1 (10th Cir. 2012)

[2] No evidentiary hearing was warranted in this proceeding because Mr. Jensen's § 2255 Motion and the record clearly and unambiguously establish that his motion is untimely. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988); 28 U.S.C. § 2255(b) (providing that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

## BACKGROUND

*A. Mr. Jensen's Convictions*

Mr. Jensen has twice been convicted of child pornography offenses. His first conviction was imposed on July 13, 2010 (the "2010 Conviction"). [*See United States v. Jensen*, No. 1:07-cr-49, ECF Nos. 103 & 104.] That conviction followed entry of his guilty plea in which he admitted that, on or about April 19, 2007, he possessed "between 300–599 images of child pornography on my computer … [and that] [t]hese images included depictions of pre-pubescent children engaged in sexual activity … [and that] [t]hese images transferred across state lines because they were transported via the Internet." [*See id.*, Statement by Def. in Advance of Plea of Guilty, ECF No. 99 at ¶ 11.] He also admitted that this conduct was in violation of 18 U.S.C. § 2252A(a)(5)(B).[3] [*See id.*] He expressly acknowledged that his attorney explained the nature of the child pornography charge against him, including that the United States would be required to prove that he "knowingly possessed any videotape, computer disk, computer files or any other material … [t]hat contained images of child pornography." [*See id.* at ¶ 1.] Mr. Jensen's plea agreement also contained a Federal Rule of Criminal Procedure 11(c)(1)(C)

[3] 18 U.S.C. § 2252A(a)(5)(B) makes it a crime to:

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]

agreement under which Mr. Jensen agreed to a 70-month prison sentence. [*Id.* at ¶ 12(C)(1).]

In connection with Mr. Jensen's sentencing, the United States Probation Office prepared a Presentence Investigation Report for Mr. Jensen (the "PSR"). [*See id.*, ECF No. 106 (sealed).] The PSR was shared with and reviewed by Mr. Jensen and his counsel. [*See id.*, ECF No. 101.] Among other things, the PSR adjusted Mr. Jensen's Guidelines offense level downward by three levels for acceptance of responsibility. [*See id.*, ECF No. 106 (sealed) at ¶ 10.] According to the PSR, Mr. Jensen was entitled to this adjustment because he had "accepted responsibility for his actions by acknowledging having possessed between 300 and 599 images of child pornography on his computer, some of which portrayed prepubescent children engaged in sexual activity." [*See id.*]

Further, in describing his "Offense Conduct," the PSR reported that on April 19, 2007, during the execution of a warrant, Mr. Jensen was found sleeping in his apartment and that "[v]arious photographs of young girls were found throughout the apartment, some of which were deemed to be pornographic," and that Mr. Jensen's computers, which included "several storage vessels containing child pornography in the form of film and photographs, were removed from the home." [*Id.* at ¶ 6.] The PSR additionally reported that another warrant executed at Mr. Jensen's apartment on May 15, 2007, "exposed additional computer discs and a camera… [and that] [t]he search of the computer and other items taken from Mr. Jensen's home established that he was in possession of at least 300 but fewer than

600 images of child pornography, to include images depicting prepubescent children engaged in sexual activity." [*Id.* at ¶¶ 6–7.]

The court accepted Mr. Jensen's plea agreement and sentenced him to a 70-month term of imprisonment and a 120-month term of supervised release. [*See id.*, ECF Nos. 103 & 104.] Notably, Mr. Jensen did not dispute any portion of the sentencing factors described in the PSR, including the sections that reduced Mr. Jensen's offense level by three levels due to his acceptance of responsibility and described his "Offense Conduct." [*See id.*, ECF No. 101.] Mr. Jensen's criminal judgment was entered on July 27, 2010. He did not appeal his sentence or conviction. Thus, it is unchallenged that his 2010 Conviction became final on August 10, 2010, more than 15 years ago.[4]

After being released from prison after serving that initial sentence, but while he was still serving his term of supervised release for his 2010 Conviction, Mr. Jensen was convicted in July of 2021 of a new and separate child pornography offense (the "2021 Conviction"). [*See United States v. Jensen*, 2:18-cr-333, ECF Nos. 67 & 70.] This second conviction, like his first, followed his entry of a guilty plea.

In his plea agreement on the 2021 Conviction, Mr. Jensen stipulated and agreed that in May of 2018 a laptop computer that he owned was found in his bedroom and that the laptop contained "over 3,400 images and videos of child pornography." [*Id.,* Statement by Def. in Advance of Plea of Guilty and Plea

---

4 Because there was no appeal, Mr. Jensen's 2010 conviction became final 14 days after July 27, 2010, the date the judgment in his criminal case was entered. *See* 28 U.S.C. § 2255(f)(1); FED. R. APP. P. 4(b)(1)(A)(i).

Agreement Pursuant to Fed. R. Crim. P. 11(c)(1)(C), ECF No. 28 at ¶ 11.] He also expressly acknowledged his previous 2010 Conviction for possession of child pornography. [*Id.*] And his plea agreement contained a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement providing that Mr. Jensen would be sentenced to a term of 168 months in prison—a sentence that he agreed was "a reasonable sentence." [*Id.* at ¶ 12(b).] The plea agreement also included the following waiver:

> I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, unless the sentence imposed is greater than the sentence set forth in this agreement, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

[*See id.* at ¶ 12(f)(1).]

The United States Probation Office prepared a new PSR for use in sentencing Mr. Jensen for his 2021 Conviction (the "Second PSR"). [*See id.*, ECF No. 68 (sealed).] The Second PSR identified several adult convictions, including his 2010 Conviction, that were used to calculate Mr. Jensen's criminal history. In doing so the Second PSR reported that:

> On May 15, 2007, a federal search warrant executed at Mr. Jensen's apartment exposed additional computer discs and a camera. Search of the computer and other items taken from Mr. Jensen's home established that he was in possession of at least 300 but fewer than 600 images of child pornography, to include images depicting prepubescent children engaged in sexual activity.

[*Id.* at ¶ 37.] Mr. Jensen's 2010 Conviction and resulting sentence was then used to increase his criminal history from two points to a total of seven points. [*See id.* at ¶¶ 35 & 40.] Despite the potential detrimental sentencing consequences of including his 2010 Conviction in the Second PSR, Mr. Jensen never objected to the

PSR's inclusion of his 2010 Conviction or the PSR's recitation of the offense conduct that supported that conviction.

On July 22, 2021, the court accepted Mr. Jensen's Rule 11(c)(1)(C) agreement and imposed the agreed upon prison sentence along with a lifetime term of supervised release. [*See id.*, ECF Nos. 67 & 70.] Mr. Jensen's 2021 Conviction became final on August 10, 2021.[5]

*B. Mr. Jensen's § 2255 Arguments*

In his § 2255 Motion, Mr. Jensen presents several arguments. First, he argues that he is actually innocent of the charge he pled guilty to under his 2010 Conviction. Mr. Jensen now claims that the child pornography images he previously admitted to possessing were not downloaded by him, that the IP addresses associated with the downloads do not match any IP address traceable to him, and that the "burning of the incriminating disc" containing the images was done in 2009 and 2010 during a period when Mr. Jensen was in federal custody and that, therefore, it was "a physical and temporal impossibility" for him to have downloaded the child pornography.[6] [*See* ECF No. 1 at 1–2.]

Second, he asserts that the police were corrupt and that he was "framed," and that official documents were forged. [*See id.* at 2–3.] For this argument Mr. Jensen relies on his assertion that there was a February 2010 television news story that

---

[5] His criminal judgment was entered on July 27, 2021. [*See id.*, ECF No. 70.] Mr. Jensen did not file any appeal.

[6] Notably, Mr. Jensen's 2010 Conviction was for knowing possession of child pornography, not for distribution, creation, or downloading child pornography.

reported that a local fireman had been caught downloading child pornography. Mr. Jensen then argues that the police "illicitly transferred" the images from that investigation to his case file so as to improperly secure his conviction. [*Id.*] And as for the forgery, Mr. Jensen claims that certain search warrants dated April 25, 2007, were not in fact signed by an active judge because the judge who signed them had retired in 1997. [*See id.* at 2–3.]

Additionally, Mr. Jensen argues that the attorney who initially represented him, but who had been discharged from representing Mr. Jensen on August 13, 2009—long before Mr. Jensen entered his guilty plea and almost one year before he was convicted—was constitutionally ineffective because this attorney did not examine the claims of corruption, illegitimate evidence, and forgery that Mr. Jensen is now advancing.[7] [*See* ECF No. 1 at 3.]

And, finally, although Mr. Jensen does not substantively challenge his 2021 Conviction, he argues that because his 2010 Conviction was used to enhance the sentence imposed for his 2021 Conviction, his first tainted conviction presented ongoing prejudice in his second conviction and a miscarriage of justice. [*See* ECF No. 1 at 3–4.]

In his § 2255 Motion, Mr. Jensen asks the court to "[v]acate, set aside, or correct the sentence imposed in this matter." [ECF No. 1 at 4.] As noted above, Mr.

[7] In his § 2255 Motion, Mr. Jensen does not assert when he informed his initial attorney of any of these concerns. Moreover, the record establishes that Mr. Jensen's attorney had been discharged from Mr. Jensen's case before February 2010, the date Mr. Jensen claims that he learned that evidence from a different child pornography investigation may have been "illicitly transferred" to his case.

Jensen was convicted and sentenced in two separate cases: his 2010 Conviction and his 2021 Conviction. Although Mr. Jensen's § 2255 Motion does not clearly specify whether he seeks this relief as to his 2010 Conviction, his 2021 Conviction, or both, reading his § 2255 Motion in the light most favorable to him, the court concludes that Mr. Jensen is seeking to vacate or set aside his 2010 Conviction and to correct the sentence imposed for his 2021 Conviction on the ground that if his 2010 Conviction is vacated it should not have been used to enhance his sentence.[8] Mr. Jensen also asked the court to grant an evidentiary hearing to "fully develop the claims of actual innocence and constitutional violations." [*Id.*]

But nowhere in Mr. Jensen's § 2255 Motion does he assert that his motion was timely filed under § 2255(f), which has a strict one-year period of limitation. Nor has Mr. Jensen addressed why his § 2255 Motion, which was filed on January 30, 2026—respectively, more than 15 years and more than 4 years after his convictions became final—should be considered timely or why the one-year limitations period under § 2255(f) should be equitably tolled to permit an untimely filing.

And, perhaps most important, Mr. Jensen's challenges to his convictions fly in the face of the sworn statements he made in connection with both of his guilty pleas. Such statements are accorded a "strong presumption of verity." *Blackledge*

---

[8] The United States takes the position that Mr. Jensen's § 2255 Motion seeks only to vacate his sentence for his 2021 Conviction. [*See* ECF No. 7 at 1, 5.] The court, however, considers Mr. Jensen's § 2255 Motion as seeking relief as to both convictions.

*v. Allison*, 431 U.S. 63, 74 (1977). Notably, Mr. Jensen never mentions in his § 2255 Motion that he entered guilty pleas to his two convictions.[9]

## ANALYSIS

*A. Mr. Jensen's § 2255 Motion is Untimely*

There is a one-year statute of limitation for § 2255 motions. As applicable here, that period runs from the latest of the date on which Mr. Jensen's convictions became final or the date on which facts supporting his claims could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f)(1), (4).

As noted above, Mr. Jensen's § 2255 Motion was filed more than 15 years after his 2010 Conviction became final. And to the extent he seeks relief as to his 2021 Conviction, Mr. Jenkin's § 2255 Motion was filed more than four years after that conviction became final. Thus, under § 2255(f)(1) his § 2255 Motion (regardless of which conviction or sentence he seeks to vacate) is untimely.

Nor is it timely under § 2255(f)(4). Notably, Mr. Jensen makes no claim that his § 2255 Motion should be considered timely under this subsection, and he makes no argument that some extraordinary circumstances prevented him from timely filing his § 2255 Motion and that he diligently pursued his right to do so.[10]

---

[9] Oddly, Mr. Jensen's § 2255 Motion mentions that his "*[t]rial* counsel's" alleged ineffectiveness "undermines confidence in the outcome of the *trial,* and "undermine[s] the confidence in the *verdict*." [ECF No. 1 at 3–4. (emphases added).] But there was no trial, no trial counsel, and no verdict. In fact, Mr. Jensen's initial counsel for his 2010 Conviction—the only counsel he claims to have been ineffective—withdrew from case and had been replaced by new counsel long before Mr. Jensen entered his guilty plea and long before Mr. Jensen was sentenced and convicted.

[10] Mr. Jensen does not represent that he purported to learn about the planting of evidence or the use of forged documents against him within one year of filing his § 2255

1. Mr. Jensen's Actual Innocence Claim Does Not Overcome the Untimeliness of His § 2255 Motion

Although he did not expressly seek relief from the one-year statute of limitations period, because Mr. Jensen asserts that he is actually innocent the court has construed his § 2255 Motion as seeking the "actual innocence" equitable gateway to habeas review recognized by the United States Supreme Court in *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) and *Schlup v. Delo*, 513 U.S. 298, 315–16 (1995).[11] In those cases, the High Court recognized that a "credible showing of actual innocence" could overcome a procedural bar like the one-year statute of limitations so that the district court could consider the merits of the petitioner's

---

Motion. To the contrary, to the extent that Mr. Jensen claims that evidence from another case was planted in his file, or that discs were created in 2009 or 2010 that were used in his 2010 Conviction, or that search warrants were improperly issued in 2007, the record on the docket reveals that Mr. Jensen or his new counsel had access to materials to make that assessment before his 2010 Conviction ever became final. [*See, e.g.,* 1:07-cr-49, ECF No. 46, dated Apr. 11, 2008 (discovery motion requesting all "physical evidence," "all search warrants," and the opportunity to "physically examine, and do an independent forensic examination of all computer-related software and hardware"); ECF No. 52, dated June 8, 2008 (supplemental discovery motion for "counsel access to all software and hardware held as evidence in this case, with the opportunity to obtain independent forensic analysis," and "a copy, with access to view the original, of the search warrants" used to search Mr. Jensen's apartment); & ECF No. 95 dated Oct. 7, 2009 (order denying as moot ECF Nos. 46 & 52 because "Defendant's counsel has informed the court that all discovery has been provided").] And to the extent that Mr. Jensen is now claiming that the search warrants may have been forged, he included as an exhibit to his § 2255 Motion an "Opinion Letter," dated January 17, 2018, that purports to support this claim. [*See* ECF No. 1-1 at 5–6.] Putting aside any authenticity or credibility issues with regard to the Opinion Letter, it establishes that, at the latest, Mr. Jensen had information about that claim in 2018, which was more than seven years before he filed his § 2255 Motion. [*See* ECF No. 1-1 at 5–6.]

[11] The Tenth Circuit has noted that the holding of *McQuiggin* is not without some "discord." *See United States v. Platt*, No. 24-1464, 2025 WL 1010267, at *2 n.2 (10th Cir. Apr. 1, 2025) (unpublished order) (noting that Justice Scalia in dissent stressed that the majority opinion "overstepped a 'clear statutory command,'" and the Supreme Court's has more recently recognized in *Jones v. Hendrix*, 599 U.S. 465, 491 (2023), that "*McQuiggin's* assertion of equitable authority to override clear statutory text was a bold one").

claims. *See McQuiggin*, 569 U.S. at 386, 392; *see also Fontenot v. Crow*, 4 F.4th 982, 1029–30 (10th Cir. 2021) (citing *McQuiggin*).[12]

But in doing so the High Court also noted that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386–87 (quoting *Schlup*, 513 U.S. at 329). It also emphasized that this standard is "'demanding' and seldom met" *Id.* at 387 (citation omitted). Indeed, the Tenth Circuit has recognized that actual innocence claims are "'rarely successful,'" particularly in proceedings where the habeas petitioner has knowingly and voluntarily pled guilty. *See United States v. McAbee*, 685 F. App'x 682, 684 (10th Cir. 2017) (unpublished) (quoting *Schlup*, 513 U.S. at 324).

Further, the High Court indicated that this gateway should only be open when a habeas petition presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). The High Court also recognized that "'the timing of the [§ 2255 motion]' is a factor bearing on the 'reliability of th[e] evidence'

[12] Although *McQuiggin* and *Schlup* concerned state prisoner habeas petitions, the Tenth Circuit has recognized that the actual innocence gateway applies equally to federal prisoner habeas petitions under § 2255. *See United States v. Platt,* 2025 WL 1010267, at *3 (applying actual innocence equitable toll under *McQuiggan* to petition brought under § 2255*); United States v. Bowen*, 936 F.3d 1091, 1108 (10th Cir. 2019) (acknowledging that actual innocence may make an untimely § 2255 claim timely); *United States v. McAbee*, 685 F. App'x 682, 685–87 (10th Cir. 2017) (unpublished) (examining whether actual innocence standard was met to excuse an untimely § 2255 petition).

purporting to show actual innocence." *McQuiggin*, 569 U.S. at 387 (quoting *Schlup*, 513 U.S. at 332). Thus, any "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.* at 399.

Here Mr. Jensen has failed to establish his actual innocence claim. As the Supreme Court explained in *Schlup*:

> [t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 324. In addition, Mr. Jensen "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. Mr. Jensen has not met and cannot meet these requirements.

First, Mr. Jensen has not presented any new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that he is actually innocent of the child pornography offense underlying his 2010 Conviction.[13] All he

[13] The only evidence offered with the Motion is the "Opinion Letter" referenced previously. But, at most, the Opinion Letter only attempts to address Mr. Jensen's claim that the search warrants may have been forged. It does not address any other claim or offer any evidence as to whether Mr. Jensen is factually and actually innocent. And even as to the claim of forgery, the Opinion Letter appears insufficient. At most it posits that in 2018 and following a review of some poorly photocopied versions of the search warrants, a so-called "handwriting expert" opined that it is his "professional expert opinion that it is highly probable that portions of this document are altered through use of copying and pasting portions of other source documents … [and that] [t]hese are not reliable documents and should not be considered authentic." [ECF No. 1-1 at 6.] But notably there is no opinion that the search warrants or signatures are forged, undercutting Mr. Jensen's claims. In fact, the Opinion Letter indicates that the expert did not have any exemplars of the true signatures or documents that he was purportedly examining to determine if there was any forgery. [*See id.* at 5 (citing the documents the expert examined, none of which are signature or document exemplars).]

presents is his *ipse dixit* assertion that an "incriminating disc," which he does not identify, was downloaded in 2009 or 2010 and that there were "technical inconsistencies" with mismatched IP addresses and devices associated with that download. [*See* ECF No. 1 at 1–2.] But Mr. Jensen does not identify any specific or new evidence, he does not offer any explanation as to who made the alleged download, does not identify who examined the disc, or explain how the incriminating disc, which he claims was not created until 2009 at the earliest, could have been used to support the charges contained in his May 8, 2007, Indictment, which had been handed down two years earlier. This sticky temporal problem is not addressed at all by Mr. Jensen.

Another temporal problem for Mr. Jensen is that this incriminating evidence, which he claims was "planted within his discovery evidence," arose from a separate unrelated 2009 or 2010 investigation involving a fireman who was alleged to have also downloaded child pornography.[14] How this evidence, which may not even have been in existence or was not in the custody of the police when Mr. Jensen was arrested, his apartment searched, and his computers seized, was used to support the charges contained in Mr. Jensen's 2007 Indictment is also left unexplained.

And as for his claim that certain search warrants dated April 2007 were forgeries, as noted above Mr. Jensen presents no reliable evidence to support this

---

[14] [*See* ECF No. 1 at 2.] The only asserted link between this investigation and Mr. Jensen's 2010 Conviction appears to be Mr. Jensen's claim that the same police officer, who was an affiant on the April 2007 search warrants issued for Mr. Jensen's apartment, was involved in this unrelated investigation some two years later.

fanciful assertion. *See supra* Note 13. And to the extent he claims the search warrants were either forgeries or otherwise invalid because the state judge who signed them retired in 1997 [*see* ECF No. 1 at 2–3], Mr. Jensen presents no evidence to support this claim.[15]

In the absence of new and reliable evidence, and in the face of Mr. Jensen's various acknowledgments (as discussed in more detail below) that he possessed child pornography as charged in his Indictment, Mr. Jensen has failed to establish his actual innocence or show that no reasonable juror would have convicted him.[16]

Perhaps most important, Mr. Jensen's plea of guilty to possession of child pornography in his 2010 Conviction undermines any claim of actual innocence. The court found, and Mr. Jensen and his counsel acknowledged, that his guilty plea was knowingly and voluntarily entered[17] and was supported by a factual basis—a factual basis in which he stipulated that he "possessed between 300–500 images of child pornography," which included depictions of prepubescent children engaged in sexual activity." [*U.S. v. Jensen*, 1:07-cr-49, ECF No. 99 at ¶ 11.] And in his plea agreement, Mr. Jensen confirmed that "his "decision to enter this plea was made

---

15 The United States asserts that this state judge retired in 2009. [*See* ECF No. 7 at 10 n.2]

16 In his § 2255 Motion, Mr. Jensen asserts that this evidence was planted in his case to "protect the actual perpetrator and improperly secure a conviction against Mr. Jensen." But Mr. Jensen does not identify this "perpetrator." Nor does he offer any evidence that the perpetrator was protected in any manner or that he did not face prosecution for his possession of child pornography.

17 [*See U.S. v. Jensen*, 1:07-cr-49, ECF No. 98 (change of plea minute entry noting that "[t]the court finds a factual basis upon which to proceed with this matter, and the defendant enters a plea of guilty to count 2 of the Indictment freely and voluntarily, with full knowledge of his legal rights and consequences of entering the plea".]

after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea." [*Id.*, ECF No. 99 at 6.] He further acknowledged that he did "not wish to make changes to this agreement because I agree with the terms and all of the statements are correct." [*Id.*]

In addition, Mr. Jensen never objected to the PSR for his 2010 Conviction, which described his offense of conviction, gave him sentencing credit for admitting to possessing "between 300 and 599 images of child pornography on his computer," and described how a search of his computer established that "he was in possession of at least 300 but fewer than 600 images of child pornography." [*See id.*, ECF No 106 (sealed) at ¶¶ 6–7, 10.] Similarly, he did not object to the inclusion in the Second PSR of evidence of his 2010 Conviction, which was used to enhance Mr. Jensen's sentence for his 2021 Conviction. [*See U.S. v. Jensen*, 2:18-cr-333, ECF No. 68 (sealed) at ¶¶ 35, 40.]

Simply put, Mr. Jensen's case is not one of the rare instances where a habeas petitioner who has pleaded guilty can establish his actual innocence. He offers no argument that his plea was not knowingly or voluntarily made. Mr. Jensen has not identified anything in his plea agreement, his plea hearing, or his later sentencing hearing that reflects that his guilty plea for his 2010 Conviction was other than knowing and voluntary. Moreover, although Mr. Jensen has asserted an argument that his initial attorney was constitutionally ineffective, that attorney had nothing to do with Mr. Jensen's plea. Rather, the record establishes that his initial attorney

had withdrawn from Mr. Jensen's case, and a new attorney was appointed for him, months before he entered his guilty plea. [*See U.S. v. Jensen*, 1:07-cr-49, ECF Nos. 79 & 81.] Mr. Jensen does not claim that his new counsel—the counsel that advised him on his plea and at his sentencing—was at any time constitutionally ineffective.[18]

Nor has Mr. Jensen demonstrated that he acted with reasonable diligence. As noted above, he provides no dates or even general timeframes as to when he discovered that evidence used against him was fabricated. Nor does he even attempt to explain how the creation of some computer disc in 2009 or 2010 somehow establishes that he did not possess child pornography in 2007. And, as also noted previously, Mr. Jensen, through counsel, acknowledged in 2009—before he entered his guilty plea—that he had received all the discovery he had been seeking, including the computer data and search warrants underlying his 2010 Conviction. *See supra* Notes 10 & 18.

In sum, Mr. Jensen's mere *ipse dixit* assertions of innocence, unsupported by any citation to new reliable evidence, when examined against his unchallenged

---

[18] Mr. Jensen's ineffective assistance argument is that his initial attorney was constitutionally deficient because he refused to "investigate the critical, exculpatory evidence of fabrication" and the claimed forgeries on the search warrants. [*See* ECF No. 1 at 3.] But even assuming that prior counsel did not fully undertake these steps, there is no assertion that Mr. Jensen's new counsel likewise failed to do so. In fact, the record shows that in August 2009 new counsel filed a motion (which was granted) to continue the trial so that he could obtain a "forensic computer expert," noting that "prior counsel" did not do so. [*See U.S. v. Jensen*, 1:07-cr-49, ECF No. 87 at 2.] In addition, and as previously noted, Mr. Jensen's new attorney informed the court that he had received all discovery he requested in this case. *See supra* Note 10. This included the allegedly forged search warrants and access to Mr. Jensen's computers and all other physical evidence.

admissions of guilt and supplemented by an unexplained 15-year delay in asserting his innocence, falls short of meeting his burden of establishing that he is actually innocent so that his untimely habeas claims may proceed. He simply has not presented any exculpatory evidence, either newly discovered or which could have been presented by counsel, that would demonstrate his actual and factual innocence and permit the court to examine the merits of his untimely claims. *See McAbee*, 685 F. App'x at 685–87 (noting that where petitioner pled guilty to knowing possession of child pornography the "high hurdle" of "showing actual innocence becomes even higher" and rejecting actual innocence argument where he failed to point to new or exculpatory evidence that "overcomes his knowing and voluntary guilty plea).

Thus, regardless of whether Mr. Jensen's § 2255 Motion seeks to vacate his 2010 Conviction or his 2021 Conviction, his § 2255 Motion is untimely and subject to dismissal.

*B. Mr. Jensen Has Waived His Right to Collaterally Attack his 2021 Conviction*

In addition to being untimely, to the extent that Mr. Jensen's § 2255 Motion is seeking collateral relief based on his argument that he was prejudiced by the use of his 2010 Conviction to enhance his sentence for his 2021 Conviction, the United States asserts that Mr. Jensen has waived any such right in his plea agreement and that his waiver independently warrants dismissal. [*See* ECF No. 7 at 6–8.][19]

---

[19] The United States has not asserted the Mr. Jensen waived his right to collaterally challenge his 2010 Conviction.

The Tenth Circuit has applied a three-part test to determine if a collateral challenge waiver is enforceable. *See United States v. Viera,* 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)). First, does the disputed claim fall within the scope of the defendant's waiver of the § 2255 rights. *Id.* Second, did the defendant knowingly and voluntarily waive his § 2255 rights. *Id.* And third, would enforcing the waiver result in a "'miscarriage of justice.'" *Id.* (quoting *Hahn*, 359 F.3d at 1325). Each part of this test is satisfied here.

Mr. Jensen's § 2255 claims clearly fall within the scope of his plea agreement's collateral challenge waiver in which he agreed to "knowingly, voluntarily, and expressly waive my right to challenge my sentence…in any collateral review motion, writ, or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the ineffective assistance of counsel."[20] [*See U.S. v. Jensen*, 2:18-cr-333, ECF 28 at 5]; *see Viera*, 674 F.3d at 1217 (finding first part of *Hahn* test satisfied where plea agreement "not only states that [defendant] waives his rights to collaterally attack but expressly names § 2255 motions as waived").

Nor is there any dispute that Mr. Jensen knowingly and voluntarily waived this right. In his plea agreement, he represented that his decision to enter his guilty plea "was made after full and careful thought; with the advice of counsel; and

[20] Mr. Jensen has not raised any claim that his attorneys handling his 2021 Conviction were ineffective.

with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea," that he "discussed this case and this plea with [his] lawyer as much as [he] wish[ed]," that he had "no additional questions," that he had "no mental reservations concerning the plea, and, as noted above and most important, that he was "knowingly, voluntarily, and expressly waiv[ing] my right to challenge my sentence, ... in any collateral review motion …, including but not limited to a motion brought under 28 U.S.C. § 2255[.]" [*See U.S. v. Jensen*, 2:18-cr-333, ECF No. 28 at 5 & 8.]

Mr. Jensen made a similar representation in his plea colloquy. [*See U.S. v. Jensen*, 2:18-cr-333, Transcript of Change of Plea Hearing, ECF No. 7-1 at 8 ("agreeing to limit [his] rights to appeal any sentence that is imposed"); *id.* at 17 (court finding that Mr. Jensen was "competent and capable" of entering a plea, that he was aware of the "consequences of pleading guilty" to the charges, and that his plea was "knowing and voluntary" and "supported by facts that Mr. Jensen has admitted on the record to be true").] Such is enough to establish the knowing and voluntary nature of Mr. Jensen's waiver. *See United States v. Edgar*, 348 F.3d 867, 872 (10th Cir. 2003) (noting that in determining whether a waiver was knowing and voluntary, the Tenth Circuit considers "two sources: (1) the text of the plea agreement and (2) the plea colloquy") (citing *United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003)); *cf. United States v. Dominguez*, 998 F.3d 1094, 1106 (10th Cir. 2021) (explaining that where, as here, "the district court complies with Rule 11 and conducts a thorough plea colloquy, in which the defendant

affirmatively indicates he understands his plea and its direct consequences," the defendant's "solemn declarations made in open court carry a strong presumption of verity") (quotation omitted). Notably, Mr. Jensen offers no argument otherwise.

And, finally, there will be no miscarriage of justice if Mr. Jensen's waiver is enforced. "[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327). Mr. Jensen has made no argument that these factors are satisfied, and the court finds that none of them apply here.

Accordingly, insofar as Mr. Jensen is challenging his 2021 Conviction or sentence, the court finds that his waiver provides a separate independent basis for dismissing his § 2255 Motion. *See United States v. Holt*, No. 2:19-cr-0413-CW, 2024 WL 1072585, at *3 (D. Utah Mar. 12, 2024); *Keele v. United States*, No. 2:23-cv-0132, 2023 WL 4548091, at *4 (D. Utah July 14, 2023).

*C. Mr. Jensen's § 2255 Motion is also Procedurally Barred*

The United States also asserts that Mr. Jensen's § 2255 Motion, insofar as it relates to any challenge to his 2021 Conviction or sentence, is barred by the procedural default rule. Under this rule a defendant who "fails to raise an issue on direct appeal . . . is barred from raising it in a § 2255 motion." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (quotation omitted).

It is undisputed that Mr. Jensen did not file any direct appeal of his 2021 Conviction, so he can only raise his sentencing challenge in a § 2225 motion if he can show "cause excusing his procedural default and actual prejudice resulting from the errors of which he complains," or show "that a fundamental miscarriage of justice will occur if his claim is not addressed." *Id.* (quotations omitted). Because Mr. Jensen's § 2255 Motion does not establish either of these grounds, the procedural bar provides yet another separate and independent basis for dismissing his § 2255 Motion insofar as it concerns his 2021 Conviction or sentence.[21]

**<u>CERTIFICATE OF APPEALABILITY</u>**

Under Rule 11 of the Rules Governing § 2255 Proceedings, the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the court must "indicate which specific issue or issues satisfy the showing." 28 U.S.C. § 2253(c)(3). To satisfy this standard, the applicant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

---

[21] Although the procedural default rule does not apply to ineffective assistance of counsel claims or to challenges based on actual innocence, *see Massaro v. United States*, 538 U.S. 500, 503–04 (2003) and *Murray v. Carrier*, 477 U.S. 478, 496 (1986), as noted above, Mr. Jensen does not bring any such challenges to his 2021 Conviction. He has only done so in connection with his 2010 Conviction and his challenges to that conviction, which as noted above, are untimely.

For the reasons stated above, the court finds that Mr. Jensen has not satisfied this substantial showing standard. The court therefore denies a certificate of appealability as to its ruling on Mr. Jensen's § 2255 Motion.

## CONCLUSION

Accordingly, and for the reasons discussed above,

**IT IS ORDERED** that Mr. Jensen's § 2255 Motion [ECF No. 1] is **DISMISSED;** and

**IT IS FURTHER ORDERED** that his request for an evidentiary hearing is **DENIED**.

DATED this 27th day of August 2026.

BY THE COURT:

Clark Waddoups
United States District Judge